IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| WINDMILL WELLNESS RANCH, L.L.C.,<br>*Plaintiff*<br><br>-vs-<br><br>MERITAIN HEALTH, INC., a New York Corporation & AGC BACKOFFICE SUPPORT SERVICES, LLC, and Oklahoma Corporation,<br>*Defendants* | SA-20-CV-01388-XR |

## ORDER

On this day, the Court considered Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 17. After careful consideration, the Court issues the following Order.

## BACKGROUND

Plaintiff Windmill Wellness, L.L.C. ("Windmill") alleges Defendants AGC Backoffice Support Services, LLC ("AGC") and Meritain Health, Inc. ("Meritain") underpaid Windmill's out-of-network provider claims. The claims were submitted under AGC's health plan (the "Plan") administered by Meritain. ECF No. 14 ¶¶ 7–8. The Plan is governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

Windmill is a co-occurring inpatient and outpatient treatment center specializing in addiction, trauma, and mental health services. ECF No. 14 ¶ 6. Windmill sought reimbursement for treating a patient ("Q.P.") who Meritain allegedly represented as having coverage under the Plan that included customary rates for out of network benefits. *Id.* ¶ 13–14. Windmill asserts that

1

Defendants underpaid the customary rate amount for the services provided to Q.P. by $279,354.96. *Id.* ¶ 17.

Windmill filed its original complaint in state court, and AGC removed on the basis of complete preemption and federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441(a). ECF No. 1 ¶¶ 6 and 9. Windmill originally brought state law claims that it later conceded were preempted by ERISA. ECF No. 12 ¶ 4. In its amended complaint, Windmill claims it has standing under ERISA pursuant to an "Assignment and Authorization to Appeal" document Q.P. executed before receiving treatment. ECF No. 14 ¶ 11. Windmill asserts (1) that it is entitled to seek relief under 29 U.S.C.A. § 1132(a)(1)(B) for Defendants' failure to pay ERISA plan benefits and (2) that Defendants violated the Mental Health Parity Act, which is incorporated into ERISA at 29 U.S.C. § 1185(a). *Id.* ¶¶ 44–56. In their Joint Motion to Dismiss, Defendants assert that Windmill lacks jurisdictional standing to bring this action under ERISA and fails to state a claim for which relief can be granted. ECF No. 17 at 1.

## DISCUSSION

### I. Legal Standard

A court should consider a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction before other Rule 12 motions attacking the merits of a claim. *Crenshaw-Logal v. City of Abilene, Tex.*, 436 F. App'x 306, 308 (5th Cir. 2011). Federal Rule of Civil Procedure 12(b)(1) allows a party to move for the dismissal of a claim for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). In considering a Rule 12(b)(1) motion to dismiss, a court must first determine whether the jurisdictional attack is facial or factual in nature. *Cell Science Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020).

A facial attack occurs when a defendant alleges a plaintiff has not sufficiently asserted a

basis of subject matter jurisdiction. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). In a facial Rule 12(b)(1) attack, "jurisdiction is determined upon the basis of the allegations of the complaint." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Cell Science*, 804 F. App'x at 263 (citing *Menchanca*, 613 F.2d at 511). The allegations in a plaintiff's complaint are taken as true for the purposes of a facial attack on subject matter jurisdiction under Rule 12(b)(1). *Id.*

A factual motion to dismiss under Rule 12(b)(1) "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Mechaca*, 613 F.2d at 511 (citing *Moretenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "A court may base its disposition of a [factual] motion to dismiss for lack of subject matter jurisdiction on the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Pan-American Life Ins. Co. v. Bergeron*, 82 F. App'x 388, 390 (5th Cir. 2003) (citation omitted). A defendant may bring a factual attack on subject matter jurisdiction at any stage of the proceedings, and the plaintiff bears the burden of proving that jurisdiction exists. *Menchaca*, 613 F.2d at 511. "When a factual attack is made upon federal jurisdiction, no presumptive truthfulness attaches to the [plaintiff's] jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Evans*, 657 F.2d at 663.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. LLC v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 US at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the court should neither "strain to find inferences

4

favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

II. **Analysis**

a. **Plaintiff Lacks Jurisdictional Standing Under ERISA.**

Healthcare providers do not have standing in their own right to sue under ERISA, but they may derivatively bring ERISA suits on behalf of their patients. *North Cypress Medical Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (citing 29 U.S.C. § 1131(A)(1)(b)). "ERISA does not forbid garnishment of an ERISA welfare benefit plan, even where the purpose is to collect judgments against plan participants." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 841 (1988); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir. 1988) ("*Hermann I*") (concluding Congress intended to allow health plan beneficiaries to assign standing to sue in federal court).

Here, it is uncontested that Windmill does not have direct standing under ERISA. Instead, Windmill claims derivative standing under ERISA based on an agreement Q.P. signed that purportedly allows Windmill to pursue legal remedies on Q.P.'s behalf. ECF No. 14 ¶ 11. The agreement states:

> I hereby voluntarily designate, authorize, an convey Windmill Wellness Ranch and its representatives, to the full extent permissible by law, to be my personal authorized representative regarding all rights and claims related to any services provided at this facility, which authorizes Windmill Wellness Ranch to: (1) submit any and all appeals when any entity denies me a benefit to which I am entitled; (2) act on my behalf in connection with any claim, right, or cause of action that may arise under my plan; (3) act on my behalf to pursue such claim, right or cause of action in connection with said plan including, but not limited to, the right and ability to act as my authorized representative with respect to a benefit plan governed by the provisions of ERISA as provided in 29 C.F.R. 2560.503-1(b)

*Id.* However, Defendants argue that Windmill lacks jurisdictional standing to sue under ERISA as Q.P.'s assignee. ECF No. 17 at 4–5. Defendants assert that assignment in this case is invalid due to a clear anti-assignment clause contained in the Plan. *Id.*

Whether a provider has third-party standing to bring a claim as an assignee is a jurisdictional issue that can be addressed under Rule 12(b)(1). *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002). Because Defendants rely on documents outside Plaintiff's amended complaint—namely the Plan, ECF No. 3-1—in bringing their Motion to Dismiss, their Rule 12(b)(1) attack is on factual grounds. *See Cell Science Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263–264 (5th Cir. 2020) (". . . [the defendant] has launched a factual attack because it has challenged the underlying facts supporting the complaint, *i.e.* the validity of the assignment, rather than merely challenging the allegations on their face."). Accordingly, there is no presumption of truth in Windmill's jurisdictional allegations, and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Evans*, 657 F.2d at 663.

A federal court does not have jurisdiction to hear a case when a healthcare provider lacks standing under ERISA to bring that case due to a valid anti-assignment clause. *Dialysis Newco, Inc. v. Community Health Sys. Group Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019) (citing *LeTourneau*, 298 F.3d at 353). When interpreting ERISA plans, a court should read a provision according to its plain meaning and how an "average plan participant" would likely understand it. *Dialysis Newco*, 938 F.3d at 251 (quotation omitted). Here, the terms of the Plan are plain and clear in barring assignment:

> No benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or change and any attempt to do so shall be void. No benefit under the Plan shall in any manner be liable for or subject to the debts, contracts, liabilities, engagements or torts of any person.

ECF No. 3-1 at 89. Moreover, the Fifth Circuit affirmed a denial of standing under ERISA based on an anti-assignment clause with very similar language in *Dialysis Newco*. *See Dialysis Newco*, 938 F.3d at 252 ("No Covered Person shall have the right to assign . . . any benefit payment under the Plan to a third party . . . .").

### i. Plaintiff Fails to Meet the Elements Required for ERISA Estoppel.

Plaintiff acknowledges the validity of the anti-assignment clause and argues that Defendants are estopped from asserting it at this point in the dispute. ECF No. 22 ¶ 4–6. "To establish an ERISA-estoppel claim, the plaintiff must establish: (1) material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–445 (5th Cir. 2005) (citing *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 513 (5th Cir. 2000); *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir. 1997)).

On the first element, Windmill asserts Defendants' raising the anti-assignment clause for the first time 6 months after the lawsuit was filed is "illustrative of the defendants laying behind the log and inconsistent with any intent to enforce the clause as to induce a reasonable belief that the right to enforce had been relinquished." ECF No. 22 ¶ 6. Defendants argue that Windmill only acted as an assignee for the first time when it filed its Second Amended Complaint, ECF No. 14. ECF No. 24 at 2–3. In Windmill's initial complaint, it brought breach of contract claims under state law, not claims under ERISA as Q.P.'s assignee. *See* ECF No. 1. Therefore, Plaintiff acted as an assignee for the first time in its Second Amendment Complaint. Defendants responded to Plaintiff's Second Amended Complaint with their Motion to Dismiss raising the anti-assignment clause. *See* ECF No. 17. Because Defendants timely raised the anti-assignment clause directly in

response to Plaintiff acting as an assignee, they did not materially misrepresent their intention to challenge Plaintiff's jurisdictional standing based on the anti-assignment clause.

On the second element, Plaintiff claims it "has relied on Defendant's acquiescence of the patient's assignment of benefits to its detriment." ECF No. 22 ¶ 6. However, the Plan directly states that "reimbursement for eligible expenses will be made directly to the provider." ECF No. 3-1 at 30. Windmill received payment in the manner specified by the plan, not by acting as Q.P.'s assignee. The fact that Windmill received direct payment under the Plan has no bearing on Windmill's jurisdictional standing under ERISA because "the right to receive direct payment is separate from the right to sue for those payments." *Dialysis Newco*, 938 F.3d at 255. Defendants paid Windmill directly under the plan, but in so doing they did not acquiesce to Plaintiff's assertion of jurisdictional standing as an assignee. Because Plaintiff did not assert its standing as an assignee until filing its Second Amended Complaint, Plaintiff did not detrimentally rely on an acquiescence by Defendants to its assertion of standing. Additionally, any reliance on assignee status by Plaintiff in filing the Second Amended Complaint was not reasonable because Plaintiff had a copy of the Plan, including the anti-assignment clause, prior to filing the Second Amended Complaint. *See* ECF No. 3-1.

Finally, Plaintiff must show "extraordinary circumstances." *Mello*, 431 F.3d at 444–445. The Fifth Circuit recognizes an approach that "generally defines extraordinary circumstances as those that involve bad faith, fraud, or concealment, as well as possibly when 'a plaintiff repeatedly and diligently inquired about benefits and was repeatedly mislead' or when 'misrepresentations were made to an especially vulnerable plaintiff.'" *Cell Science*, 804 F. App'x at 266 (citing *High v. E-Systems, Inc.*, 459 F.3d 573, 580 n.3 (5th Cir. 2006)). Although Plaintiff argues it diligently inquired about payment before treating Q.P., it does not maintain it inquired about standing to sue

as an assignee. ECF No. 14 ¶ 9–10. Because Plaintiff does not meet any of elements required for ERISA estoppel, this Court declines to estop enforcement of the Plan's anti-assignment clause.

### ii. Defendants Did Not Waive the Anti-Assignment Clause.

As an alternative to estoppel, Plaintiff argues Defendants waived their right to assert the Plan's anti-assignment clause. ECF No. 22 ¶ 7. Waiver is the "voluntary or intentional relinquishment of a known right." *High*, 459 F.3d at 581 (quotation omitted). Plaintiff asserts that Defendants voluntarily relinquished their right to question Plaintiff's standing under the anti-assignment provision when they failed to raise it as an issue during prior discourse. ECF No. 22 ¶ 4–6. This argument fails for two reasons. First, the Plan explicitly provides for direct payment of healthcare providers, so Plaintiff was not acting as an assignee in seeking and receiving payment. ECF No. 3-1 at 30. Second, even if Defendants had acknowledged Plaintiff as an assignee in receiving payment, the right to receive payment as an assignee is separate from the right to sue as an assignee. *See Dialysis Newco*, 938 F.3d at 255. There is nothing to indicate Defendants have ever recognized, acknowledged, or been aware of Plaintiff's assertion of its standing to sue as an assignee under ERISA prior to Plaintiff filing its Second Amended Complaint. The Court declines to find that Defendants waived their right to challenge Plaintiff's standing under the Plan's anti-assignment clause.

### iii. Department of Labor Regulations Do Not Give Plaintiff Jurisdictional Standing.

Plaintiff argues Department of Labor regulations allow it to act on behalf of Q.P. because Q.P.'s condition "involve[d] urgent care." ECF No. 22 ¶ 12 (citing 29 C.F.R. § 2560.501–1(b)(4)). However, "whether a claim is a 'claim involving urgent care' . . . is to be determined by an individual acting on behalf of the plan applying the judgment of a prudent layperson who possesses

an average knowledge of health and medicine." 29 C.F.R. § 2560.501–1(m)(1)(ii). There is no evidence that such a determination was made by the Plan in the instant case.

Additionally, Department of Labor Regulations "do not preclude an *authorized representative* of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." citing 29 C.F.R. § 2560.501–1(b)(4) (emphasis added). Authorized representatives and assignees are distinct because where an authorized representative acts on behalf of a beneficiary, an assignee acts on its own right. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1143 (C.D. Cal. 2015) (citation omitted); *Univ. of Wis. Hosp. and Clinics Authority v. Costco Emp. Benefits Program.*, No. 15–412, 2015 WL 1065559, *3 (W.D. Wis. December 23, 2015) ("status as an assignee or an authorized representative is not a mere . . . technicality, but a fundamental issue."). Under 29 C.F.R. § 2560.501–1(b)(4), Plaintiff is not precluded from acting as Q.P.'s authorized representative. However, authorized representative status does not confer standing to sue in federal court. *AllianceMed LLC v. Aetna Life Ins. Co.*, No. 16–02435, 2017 WL 394524, at *3 (D. Ariz. Jan. 30, 2017) ("Although the C.F.R. allows a representative to act on the claimant's behalf when dealing with the insurance company, it does not bestow upon that representative standing to file suit against the company in federal court."); *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. And Vision Plan*, No. 17–2364, 2017 WL 6561165, at *10 (S.D. Tex. Dec. 22, 2017) (collecting cases that reject 29 C.F.R. § 2560.501–1(b)(4) as a basis for bringing claims in federal courts).

## CONCLUSION

For the foregoing reasons, the Court holds that Plaintiff does not have standing to file the instant lawsuit. Defendants' Joint Motion to Dismiss, ECF No. 17, is **GRANTED**. Plaintiff's Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

It is so ORDERED.

SIGNED this 25th day of June, 2021.

                                          Xavier Rodriguez
                                          United States District Judge